**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**BORREGO SPRINGS BANK, N.A.**                                               **APPELLANT**

**V.**                                                        **CASE NO. 3:07CV094**

**SKUNA RIVER LUMBER, LLC**                                            **APPELLEES**

**ORDER**

This cause comes before the court on the appeal of Borrego Springs Bank, N.A. ("Borrego") from the September 22, 2006 order and opinion of the United States Bankruptcy Court for the Northern District of Mississippi. This Court, having heard oral argument and having reviewed the submissions of the parties, is now prepared to rule.

Skuna River Lumber, LLC ("Skuna") is a Mississippi corporation formed in April 2003, by R. Scott Clark, Skuna's sole member. On February 14, 2005, Skuna obtained a $2.4 million commercial loan from Borrego to purchase a lumber mill in Bruce, Mississippi from Memphis Hardwood Flooring, Inc. Borrego had a perfected security interest in both the real and personal property of the mill. The mill stopped operating in December of 2005.

Silvaris, a junior lien holder to Borrego, learned that Skuna had ceased operations and was in default. It accelerated all sums due under its agreement with Skuna and scheduled a foreclosure sale for January 27, 2006. Skuna then filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on January 26, 2006, the day before the scheduled foreclosure sale. Silvaris subsequently moved for relief from the automatic stay on January 31, 2006. Borrego moved for the same on February 13, 2006. On March 17, 2006, Borrego moved

to withdraw its motion leaving active only the junior lien holder's motion.

On February 28, 2006, Skuna filed an emergency application to employ Equity Partners, Inc. ("EPI") to obtain additional financing or to assist in the sale of assets. Skuna also filed a motion to establish bidding procedures for the sale of assets. Borrego and Silvaris objected to the motions to employ EPI and to establish bidding procedures. After a hearing, the court ordered the parties to submit an agreed order granting the application to employ EPI and establishing the procedures for the sale of assets.

On April 13, 2006, Borrego filed a second motion to lift the stay. The next day, April 14, 2006, the agreed order the parties had earlier been directed to submit to the court regarding EPI's employment and the sale of assets was entered. This order approved sale procedures outlined in the order to "sell substantially all of the Debtor's assets free and clear of liens, claims, and encumbrances to a perspective [sic] successful bidder at the auction with any liens, claims, and encumbrances attaching to the proceeds." The language of the order also granted Borrego and other secured creditors a reservation of rights to object to EPI's request for fees.

Borrego next moved to withdraw its second motion for relief from automatic stay. This motion was granted on May 2, 2006. The same day, Skuna moved to sell all assets of the debtor in possession.

A hearing on Skuna's motion to sell assets was held on June 15, 2006. The auction contemplated by Skuna's motion to sell was also set for June 15, 2006. The day of the hearing and the sale Borrego filed an objection to the submitted bids. The objection sought a rejection of all submitted bids or a rejection of the sale in total and a grant of immediate relief from the automatic stay.

The auction was conducted by Ken Mann of EPI at the Thad Cochran U.S. Bankruptcy Court in Aberdeen. At auction, the following "stalking horse" bids were announced to all of the prospective bidders:

| | |
|---|---|
| Lot 1 (8.3 acres "carve out" realty): | Weyerhaeuser Co - $62,250.00 |
| Lot 2 (Machinery and equipment): | Perfection Machinery - $265,000.00 |
| Lot 3 (All real property): | No "stalking horse" bid |
| Lot 4 (All realty, machinery, & equip): | SB Capital - $530,000.00 |

At the conclusion of that auction, the final bids were as follows:

| | |
|---|---|
| Lot 1 (8.3 acres "carve out" realty): | Weyerhaeuser Co - $62,250.00 |
| Lot 2 (Machinery and equipment): | SB Capital $575,000.00<br>Perfection Machinery - $565,000.00<br>Koster Industries - $515,000.00<br>Michael Fox Int'l. - $340,000.00 |
| Lot 3 (All real property): | No bids |
| Lot 4 (All realty, machinery, & equip): | Borrego (credit bid) - $705,000.00<br>Perfection Machinery - $695,000.00 |

Since Lot 4 included all of Lots 1, 2, and 3, Borrego was the highest bidder at auction. It credit bid $705,000.00 against the debt owed by Skuna for the realty, machinery, and equipment of the estate. The court entered a final order approving sale of the assets on July 24, 2006. On July 26, 2006, Skuna filed a motion to pay EPI's fees and expenses. All secured creditors objected to this motion, with Borrego asserting that it executed a warranty deed and bill of sale passing the property out of the estate on August 28, 2006. The court heard Skuna's motion to pay EPI's fees on September 6, 2006 and issued an order granting Skuna's motion on September 26, 2006. Borrego now appeals.

Borrego proffers four issues for review in this appeal. Borrego contends that the bankruptcy court erred in surcharging assets after they had been conveyed outside the bankruptcy estate; that the bankruptcy court lacked authority and jurisdiction to surcharge the assets of the bankruptcy estate pursuant to 11 U.S.C. § 506(c) after the conveyance to Borrego; that the bankruptcy court erred in its interpretation and application of 11 U.S.C. 506(c) to the extent that it required Borrego to pay new money to EPI; and that the bankruptcy court erred in finding that Borrego was equitably estopped from objecting to EPI's compensation because it withdrew its motions for relief from the automatic stay prior to the sale.

## ANALYSIS

The applicable standard of review by a district court in a bankruptcy appeal is the same as a Court of Appeals review of a district court proceeding. See 28 U.S.C. § 158(c); *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir.1989). Findings of fact by the bankruptcy courts are to be reviewed under the clearly erroneous standard, while conclusions of law are reviewed de novo. *In re Kennard*, 970 F.2d 1455, 1457-58 (5th Cir.1992); *In re Hammons*, 614 F.2d 399, 403 (5th Cir.1980).

The court addresses Borrego's fourth assignment of error first. The court below held that Borrego Springs was equitably estopped from objecting to EPI's compensation because it twice withdrew its motions for relief from automatic stay and because Borrego participated in the bidding process. This ruling was in error. Borrego consistently preserved its objections to the hiring of EPI and to EPI's payment. Even though Borrego twice withdrew its motions for relief, those motions were separate from its objections to EPI's employment. Borrego's right to object to a request for a fee or commission was, in fact, reserved in the order granting Skuna's motion

to employ EPI.  Specifically, the order states, " . . . EPI reserves the right to request a fee to which the Secured Creditors reserve their rights to object . . ."  Further, Borrego's participation in the auction cannot be construed as a tacit endorsement of EPI's employment.  Borrego had to protect its interests, though it objected to the emergency sale as well as to the bids submitted before the auction.

Both parties acknowledge that bankruptcy court jurisdiction generally ends when the property at issue leaves the bankruptcy estate.  However, the jurisdictional question in this case is resolved by considering the language of the bankruptcy court's April 14, 2006 order approving the sale procedures to be implemented, as well as considering the adversary proceeding initiated on March 10, 2006.  The order establishing sale procedures for the auction stated that substantially all of the debtor's assets would be sold "free and clear of liens, claims, and encumbrances to a perspective [sic] successful bidder at the auction with any liens, claims, and encumbrances attaching to the proceeds."  The bankruptcy court clearly retained jurisdiction over the proceeds.  Further, separate language in the sale procedures order, as well as language in the order approving the sale after auction, references the court's reservation of power to determine the existence of lien priority and validity through the adversary proceeding.  The sale procedures order states,  "Any foreclosure or collection shall be specifically subject to the Adversary Proceeding bearing cause number 06-01088 filed in this Court (the "Adversary Proceeding") in order to determine lien priority and validity among and between the Secured Creditors."  The sale approval order also referenced the adversary proceedings, stating, "The lien priority and validity with respect to the [A]ssets, among and between Borrego Springs Bank, N.A.  . . . and others are

5

the subject of an adversary proceeding bearing Cause Number 06-01088 filed in this Court (the "Adversary Proceeding") and are not adjudicated herein."

This court will simultaneously address Borrego's second and third assignments of error. Borrego's second assignment of error asserts that the bankruptcy court lacked jurisdiction to surcharge the assets of the estate pursuant to 11 U.S.C. § 506(c). 11 U.S.C. § 506(c) provides that "the trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property." In order to charge a secured creditor with administrative expenses under § 506, three elements must be shown: (1) the expenditure was necessary, (2) the amounts expended were reasonable, and (3) the creditor benefitted from the expenses. *In the Matter of Delta Towers, Ltd.*, 924 F.2d 74, 76 (5th Cir. 1991) (citing *In re Trim-X, Inc.*, 695 F.2d 296, 299 (7th Cir. 1992)). Administrative expenses are generally satisfied out of the bankruptcy estate. *Id.* Payment of administrative expenses from the proceeds of secured collateral are allowed when incurred primarily for the benefit of the secured creditor or when the secured creditor caused or consented to the expense. *In re Hughes*, 2006 WL 1308667, *2 (S.D. Fla. 2006.)

The crux of Borrego's contention is bottomed on its claim that it should be exempt from expenses since it "credit bid." As best this court can discern from the briefs, credit bidding is a term of art which means that a creditor uses the claim it is owed as currency in an auction. When a secured creditor credit bids at an auction there is no exchange of cash, as the amount bid at auction is taken from the amount owed by the debtor. Such practices necessarily conflict with the goal of an auction, which is to generate enough funds to repay secured creditors and possibly

6

create a monetary surplus after all secured creditors are paid. Since Borrego credit bid in this instance, the auction did not generate enough funds to repay Skuna's debt. Borrego argues that EPI's services did not confer any benefit upon it because it had to credit bid, and therefore requiring Borrego to compensate EPI would be inequitable.

The court below found that the advertising expenses advanced by EPI as well as its commission from the sale were reasonable and necessary. This court finds no clear error in that holding. Borrego did not cause or consent to the expense of hiring EPI; however, it did benefit from actions taken to generate interest in the property, and from the sale. Thirty-four prospective bidders were generated, due in part to EPI's efforts. The bankruptcy court noted that in addition to passing title, the auction also established a market value for the real property, machinery, and equipment.

Public policy considerations are appropriate in judicial analysis in the absence of controlling statutory or case law. The bankruptcy court, cognizant of the lack of controlling law in this case, stated, " . . . to disallow reimbursement of expenses and compensation to EPI would significantly discourage professionals such as EPI from attempting to assist debtors and trustees in efforts to market assets if a credit bid could negate the prospects of being compensated." Secured creditors are aware that those performing compensable services receive priority payment from funds generated from a third party at auction. If such third-party actors cannot be paid, they will not provide services. This court discerns no difference in funds generated from a creditor as opposed to funds generated by a third party. Accordingly, this court cannot accept the non sequitur Borrego urges.

The bankruptcy court determined that EPI was entitled to compensation and this court concurs. As the highest bidder at auction, Borrego is responsible for EPI's compensation. To the extent that the bankruptcy court created a lien against the assets of the estate, but did not charge a debt and enter a judgment against Borrego, the bankruptcy court is hereby authorized to enter such orders as it deems necessary to effect payment of this debt by Borrego. Accordingly, this case is hereby REVERSED IN PART AND REMANDED IN PART for further proceedings consistent with this order.

This the 30th day of January, 2008.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**